**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | |
|---|---|
| IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION | **MDL No: 2:18-mn-2873-RMG** |
| | **JUDGE RICHARD GERGEL** |
| JAMES ROBERT KELLY | |
| AND | **Civil Action No:** 2:24-cv-00443-RMG |
| DENISE MARIE KELLY | **COMPLAINT AND** |
| Plaintiffs, | **JURY DEMAND** |
| v. | |

3M COMPANY f/k/a Minnesota Mining and
　　Manufacturing Company;
AGC CHEMICALS AMERICA, INC.;
ALLSTAR FIRE EQUIPMENT CO.;
AMEREX CORP.;
ARCHROMA U.S., INC.;
ARKEMA, INC.;
BASF CORPORATION, Individually and as
　　Successor-in-Interest to Ciba, Inc.;
BUCKEYE FIRE EQUIPMENT COMPANY;
CARRIER FIRE & SECURITY
　　CORPORATION;
CARRIER GLOBAL CORPORATION;
CB GARMENT, INC.;
CHEMDESIGN PRODUCTS, INC.;
CHEMGUARD, INC.;
CHEMICALS INCORPORATED;
CHUBB FIRE, LTD.;
CLARIANT CORP., Individually and as
　　Successor-in-Interest to Sandoz
　　Chemical Corp.;
CORTEVA, INC.;
DAIKIN AMERICA, INC.;
DEEPWATER CHEMICALS, INC.;
DUPONT DE NEMOURS, INC., f/k/a
　　DowDuPont, Inc.;
DYNAX CORP.;

E.I. DU PONT DE NEMOURS AND
      COMPANY., Individually and as
      Successor-in-Interest to DuPont
      Chemical Solutions Enterprise;
FIRE-DEX, LLC;
FIRE SERVICE PLUS, INC.;
GLOBE MANUFACTURING COMPANY,
      LLC;
HONEYWELL SAFETY PRODUCTS USA,
      INC.;
INNOTEX CORP.;
KIDDE-FENWAL, INC., Individually and as
      Successor-in-Interest to Kidde Fire
      Fighting, Inc.;
KIDDE PLC, INC.;
LION GROUP, INC.;
L.N. CURTIS AND SONS;
MALLORY SAFETY AND SUPPLY LLC;
MILLIKEN & COMPANY;
MINE SAFETY APPLIANCES CO., INC.;
MUNICIPAL EMERGENCY SERVICES,
      INC.;
NATION FORD CHEMICAL CO.;
NATIONAL FOAM, INC.;
PBI PERFORMANCE PRODUCTS, INC.;
PERIMETER SOLUTIONS, LP;
RICOCHET MANUFACTURING
      COMPANY, LLC;
SAFETY COMPONENTS FABRIC
      TECHNOLOGIES, INC.;
SOUTHERN MILLS, INC.;
STEDFAST USA, INC.;
THE CHEMOURS COMPANY;
THE CHEMOURS COMPANY FC, LLC;
TYCO FIRE PRODUCTS LP;
UNITED TECHNOLOGIES CORP.;
UTC FIRE & SECURITY AMERICAS
      CORP., INC.;
VERIDIAN LIMITED;
WITMER PUBLIC SAFETY GROUP, INC.;
      and
W.L. GORE & ASSOCIATES, INC.

      Defendants.

2

## COMPLAINT

Plaintiffs James Robert Kelly and Denise Marie Kelly,[1] by and through undersigned counsel, Schochor, Staton, Goldberg and Cardea, P.A., brings this action against the above-named Defendants, and allege as follows:

## INTRODUCTION

1.       Plaintiffs bring this action for damages for personal injury resulting from exposure to aqueous film-forming foams ("AFFF") and firefighter turnout gear ("TOG") containing the toxic chemicals collectively known as per and polyfluoroalkyl substances ("PFAS"). PFAS includes, but is not limited to, perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonic acid ("PFOS") and related chemicals including those that degrade to PFOA and/or PFOS.

2.       AFFF is a specialized substance designed to extinguish petroleum-based fires. It has been used for decades by military and civilian firefighters to extinguish fires in training and in response to Class B fires.

3.       TOG is personal protective equipment designed for heat and moisture resistance in order to protect firefighters in hazardous situations. Most turnout gear is made up of a thermal liner, moisture barrier, and an outer lawyer. The inner layers contain PFAS, and the outer layer is often treated with additional PFAS.

4.       Defendants collectively designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise released into the stream of commerce AFFF and/or TOG products with knowledge that it contained highly toxic and bio persistent PFAS which would expose end users of the product to the risks associated with PFAS.   Further, Defendants designed, marketed, developed, manufactured, distributed,

---

[1] Unless otherwise indicated, "Plaintiff" refers to Plaintiff James Robert Kelly.

released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF or TOG products which contained PFAS for use in firefighting.

5.      PFAS binds to proteins in the blood of humans exposed to the material and remains and persists over long periods of time. Due to their unique chemical structure, PFAS accumulates in the blood and body of exposed individuals.

6.      PFAS are highly toxic and carcinogenic chemicals. Defendants knew, or should have known, that PFAS remain in the human body while presenting significant health risks to humans.

7.      Defendants' PFAS-containing AFFF or TOG products were used by Plaintiff in their intended manner and for the purposes for which they were intended, without significant change in their condition when they left Defendants' control. Plaintiff was unaware of the dangerous properties of the Defendants' AFFF or TOG products and relied on the Defendants' warnings and instructions as to the proper handling of the products. Plaintiff's consumption, inhalation, and/or dermal absorption of PFAS from Defendants' AFFF or TOG products caused Plaintiff to develop the serious medical conditions and complications alleged herein.

8.      Through this action, Plaintiff seeks to recover compensatory, punitive, and other damages arising out of the permanent and significant damages sustained as a direct result of exposure to Defendants' AFFF or TOG products at various locations during the course of his training, firefighting activities, and/or military service. Plaintiff further seeks any appropriate injunctive, equitable, and declaratory relief arising from the same.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists between Plaintiffs and Defendants and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

10.     Venue is proper in this District Court pursuant to this Court's Case Management Order No. 3 ("CMO #3") issued by the Honorable Richard M. Gergel of this Court.  Pursuant to CMO #3, Plaintiff designates the United States District Court for the Southern District of California as the "home venue" where Plaintiffs would have otherwise filed suit pursuant to 28 U.S.C. § 1391.  But for CMO #3, venue is proper in the United States District Court for the Southern District of California because it is the judicial district in which Plaintiff is a resident and/or citizen, a substantial part of the events or omissions giving rise to the claim occurred in that district, and the Defendants conduct business within that district.   Plaintiffs respectfully requests that, at the time of the transfer of this action back to trial court for further proceedings, this case be transferred to the United States District Court for the Southern District of California.

11.     The United States District Court for the Southern District of California has personal jurisdiction over the Defendants because at all times relevant to this lawsuit, the Defendants manufactured, designed, marketed, distributed, released, promoted, and/or otherwise sold (directly or indirectly) PFAS-containing AFFF or TOG products to various locations, such that each Defendant knew or should have known that said products would be delivered to areas in the State of California.  Therefore, the exercise of jurisdiction over the Defendants by the United States District Court for the Southern District of California does not offend traditional notions of fair play and substantial justice.

## PARTIES

### A. Plaintiff

12.     James Robert Kelly is a resident of Carlsbad, California.

13.     Plaintiff was exposed to Defendants' AFFF and TOG products during his career as a professional firefighter working for the Encinitas Fire Department from approximately 1982 to 2007.

14.     As a result of his exposure to Defendants' AFFF and TOG products, Plaintiff was diagnosed with prostate cancer, which has caused him to suffer severe personal injuries, pain, suffering, and emotional distress.

15.     Plaintiff's injuries, pain, suffering, and emotional distress were directly and proximately caused by Plaintiff's exposure to Defendants' AFFF and TOG products.

### B. Defendants.

16.     At all times relevant to this litigation, upon information and belief, each of the Defendants designed, developed, manufactured, marketed, distributed and/or sold the PFAS-containing AFFF or TOG products to which Plaintiff was exposed, including in those states and locations where Plaintiff was exposed.

17.     Each of the Defendants designed, developed, manufactured, marketed, and/or sold the PFAS-containing AFFF or TOG products to which Plaintiff was exposed, and directly and proximately caused Plaintiff to develop prostate cancer and suffer severe personal injuries, pain, suffering, and emotional distress.

18.     Defendant **3M Company (f/k/a/ Minnesota Mining and Manufacturing Company) ("3M")** is a Delaware corporation and conducts business throughout the United States,

including those states and locations where Plaintiff was exposed, with its principal place of business located at 3M Center, St. Paul, Minnesota 55144.

19.     Upon information and belief, 3M Company manufactured, distributed, and sold PFAS-containing AFFF products from the 1960s until at least 2002.

20.     At all times relevant, 3M Company designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

21.     Defendant **AGC Chemicals Americas Inc**. (**"AGCCA"**) is a corporation organized and existing under the laws of Delaware, having a principal place of business at 55 East Uwchlan Avenue, Suite 201, Exton, PA 19341.  Upon information and belief, AGCCA is a subsidiary of AGC, Inc., a Japanese corporation formerly known as Asahi Glass Company, Ltd.

22.     AGCCA conducts business throughout the United States, including those states and locations where Plaintiff was exposed, manufacturing glass, electronic displays, and chemical products, including resins, water and oil repellants, greenhouse films, silica additives, and various fluorointermediates, including those used in AFFF products.

23.     At all times relevant, AGCCA designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant

7

designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

24.    Defendant **Amerex Corporation** ("Amerex") is a corporation organized and existing under the laws of the State of Alabama, with its principal place 10 of business located at 7595 Gadsden Highway, Trussville, AL 35173.

25.    Amerex is a manufacturer of firefighting products. Beginning in 1971, it was a manufacturer of hand portable and wheeled extinguishers for commercial and industrial applications.

26.    In 2011, Amerex acquired Solberg Scandinavian AS, one of the largest manufacturers of AFFF products in Europe.

27.    Upon information and belief, beginning in 2011, Amerex designed, manufactured, marketed distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

28.    Defendant **Archroma U.S., Inc. ("Archroma U.S.")** is a Delaware corporation with its principal place of business located at 5435 77 Center Dr., #10, Charlotte, North Carolina 28217.  Upon information and belief, Archroma U.S. is a subsidiary of Archroma Management, LLC.

29.    Upon information and belief, Archroma U.S. was formed in 2013 when Defendant Clariant Corporation divested its textile chemicals, paper specialties, and emulsions business to SK Capital Partners.

30.     Upon information and belief, Archroma U.S. designed, manufactured, marketed, distributed, and sold perfluorinated chemicals containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

31.     Upon information and belief, Archroma U.S., Inc. has conducted and/or availed itself of doing business throughout the United States, including those states and locations where Plaintiff was exposed.

32.     Defendant **Arkema Inc. ("Arkema")** is a corporation organized and existing under the laws of Pennsylvania, having a principal place of business at 900 First Avenue, King of Prussia, PA 19406.   Upon information and belief, the assets of Arkema's fluorochemical business were purchased by Defendant DuPont in 2002.   Arkema conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

33.     At all times relevant, Arkema designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.   Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

34.     Defendant **BASF Corporation ("BASF")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 100 Park Avenue, Florham Park, New Jersey 07932. BASF conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

9

35.    On information and belief, BASF is the largest affiliate of BASF SE and the second largest producer and marketer of chemicals and related products in North America.

36.    On information and belief, BASF is the successor-in-interest to Ciba-Geigy, Inc., Ciba Specialty Chemicals Company, and Ciba, Inc., a Swiss specialty chemicals company, that manufactured fluorosurfactants containing PFOA used in AFFF.

37.    At all times relevant, BASF designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

38.    Defendant **Buckeye Fire Equipment Company ("Buckeye")** is a corporation organized and existing under the laws of Ohio, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.  Buckeye conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

39.    At all times relevant, Buckeye designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

10

40.   Defendant **Carrier Fire & Security Corporation ("Carrier Fire")** is a Delaware Corporation and does business throughout the United States.  Carrier Fire has its principal place of business at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

41.   At all times relevant, Carrier Global designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

42.   Defendant **Carrier Global Corporation ("Carrier Global")** is a Delaware corporation with its principal place of business located at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.  Carrier Global conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

43.   On information and belief, Carrier Global was formed in March 2020 when Defendant United Technologies Corporation spun off its fire and security business before it merged with Raytheon Company in April 2020.

44.   On information and belief, Kidde-Fenwal, Inc., a manufacturer of AFFF products, became a subsidiary of Carrier Global when Defendant United Technologies Corporation spun off its fire and security business in March 2020.

45.   At all times relevant, Carrier Global designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting

training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

46.     Defendant **ChemDesign Products, Inc. ("ChemDesign")** is a Delaware corporation with its principal place of business at 2 Stanton Street, Marinette, Wisconsin 54143. ChemDesign conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

47.     At all times relevant, ChemDesign designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

48.     Defendant **Chemguard, Inc. ("Chemguard")** is a corporation organized and existing under the laws of Texas, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143. Chemguard conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

49.     Upon information and belief, Chemguard was acquired by Defendant Tyco International Ltd. in 2011 and is a subsidiary of Johnson Controls International PLC.

50.     At all times relevant, Chemguard designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or

otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

51.    Defendant **Chemicals, Incorporated ("Chemicals, Inc.")** is a corporation organized and existing under the laws of Texas, with its principal place of business located at 12321 Hatcherville, Baytown, TX 77520.  Chemicals, Inc. conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

52.    Upon information and belief, Chemicals, Inc. supplied perfluorinated chemicals containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

53.    Defendant **Chubb Fire, Ltd. ("Chubb")** is a foreign private limited company, United Kingdom registration number 134210, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.   Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including, but not limited to, Chubb Fire & Security, Ltd., Chubb Security PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.  Upon information and belief, Chubb was part of Defendant UTC Fire & Security Americas Corporation, Inc.

54.    Chubb conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

55.    At all times relevant, Chubb designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or

otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

56.     Defendant **Clariant Corporation ("Clariant")** is a corporation organized and existing under the laws of New York, having a principal place of business at 4000 Monroe Road, Charlotte, North Carolina 28205.  Clariant conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

57.     Upon information and belief, Clariant is successor-in-interest to Sandoz Chemicals Corporation ("Sandoz").  Upon information and belief, Sandoz spun off its specialty chemicals business to form Clariant in 1995.

58.     Upon information and belief, Clariant supplied perfluorinated chemicals containing PFOS, PFOA, and/or their chemical precursors for use in manufacturing the fluorosurfactants used in AFFF products.

59.     At all times relevant, Clariant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

14

60.     Defendant **Daikin America, Inc.** is a corporation organized and existing under the laws of Delaware, having its principal place of business at 20 Olympic Drive, Orangeburg, New York 10962.

61.     Upon information and belief, Daikin America, Inc. was established in 1991 and is a subsidiary of Daikin Industries Ltd., a corporation organized under the laws of Japan, having its principal place of business in Osaka, Japan.

62.     Upon information and belief, Daikin supplied perfluorinated chemicals containing PFOS, PFOA and/or their chemical precursors for use in manufacturing fluorosurfactants used in AFFF products used in those states and locations where Plaintiff was exposed.

63.     Defendant **Deepwater Chemicals, Inc. ("Deepwater")** is a corporation organized under the laws of Delaware, with its principal place of business located at 196122 E County Road 40, Woodward, OK, 73801.

64.     Upon information and belief, Deepwater Chemicals designed, manufactured, marketed, distributed, and sold fluorosurfactants containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products used in those states and locations where Plaintiff was exposed.

65.     Defendant **E. I. du Pont de Nemours and Company ("DuPont")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.  DuPont conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

66.     DuPont is a successor-in-interest to **DuPont Chemical Solutions Enterprise** ("DuPont Chemical"), a Delaware corporation with a principal place of business located at 1007 Market Street, Wilmington, Delaware 19898.

67.    Defendant **The Chemours Company ("Chemours Co.")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899. Chemours Co. conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

68.    In 2015, DuPont spun off its performance chemicals business to Chemours Co., along with vast environmental liabilities which Chemours Co. assumed, including those related to PFOS and PFOA and fluorosurfactants.

69.    Upon information and belief, at the time of the transfer of its performance chemicals business to Chemours Co., DuPont had been sued, threatened with suit and/or had knowledge of the likelihood of litigation to be filed regarding DuPont's liability for damages and injuries arising from the manufacture and sale of fluorochemicals and the products that contain fluorochemicals.

70.    Upon information and belief, Chemours Co. has supplied fluorosurfactants containing PFOS and PFOA, and/or their chemical precursors to manufacturers of AFFF products.

71.    Upon information and belief, Chemours Co. was incorporated as a subsidiary of DuPont as of April 30, 2015.  From that time until July 2015, Chemours Co. was a wholly-owned subsidiary of DuPont.

72.    In July 2015, DuPont spun off Chemours Co. and transferred to Chemours Co. its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of Chemours Co. stock to DuPont stockholders, and Chemours Co. has since been an independent, publicly-traded company.

73.    Defendant **The Chemours Company FC, LLC ("Chemours FC"),** a successor-in-interest to DuPont Chemical, is a limited liability company organized under the laws of the State

of Delaware, with its principal place of business located at 1007 Market Street, Wilmington, Delaware, 19899. Chemours FC conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

74.     Defendant **Corteva, Inc. ("Corteva")** is a Delaware corporation with its principal place of business located at 974 Centre Road, Wilmington, Delaware 19805.

75.     Defendant **Dupont de Nemours, Inc. f/k/a DowDuPont, Inc. ("Dupont de Nemours Inc.")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 974 Centre Road, Wilmington, Delaware 19805 and 2211 H.H. Dow Way, Midland, Michigan 48674.

76.     On June 1, 2019, DowDuPont separated its agriculture business through the spin-off of Corteva.

77.     Corteva was initially formed in February 2018. From that time until June 1, 2019, Corteva was a wholly-owned subsidiary of DowDuPont.

78.     On June 1, 2019, DowDuPont distributed to DowDuPont stockholders all issued and outstanding shares of Corteva common stock by way of a pro-rata dividend. Following that distribution, Corteva became the direct parent of E.I. Du Pont de Nemours & Co.

79.     Corteva holds certain DowDuPont assets and liabilities, including DowDuPont's agriculture and nutritional businesses.

80.     On June 1, 2019, DowDuPont, the surviving entity after the spin-off of Corteva and of another entity known as Dow, Inc., changed its name to DuPont de Nemours, Inc., to be known as DuPont ("New DuPont"). New DuPont retained assets in the specialty products business lines following the above-described spin-offs, as well as the balance of the financial assets and liabilities of E.I DuPont not assumed by Corteva.

81.     Defendants E. I. Du Pont de Nemours and Company; The Chemours Company; The Chemours Company FC, LLC; Corteva, Inc.; and DuPont de Nemours, Inc. are collectively referred to as "DuPont" throughout this Complaint.

82.     At all times relevant, DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, DuPont designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

83.     Defendant **Dynax Corporation ("Dynax")** is a corporation organized and existing under the laws of Delaware, having a principal place of business at 103 Fairview Park Drive, Elmsford, New York 10523-1544.   Dynax conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

84.     On information and belief, Dynax entered the AFFF business in 1991 and quickly became a leading global producer of fluorosurfactants and fluorochemical foam stabilizers containing PFOS, PFOA, and/or their chemical precursors for use in AFFF products.

85.     At all times relevant, Dynax designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint.  Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced

instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

86.     Defendant **Kidde PLC, Inc.** is a Delaware corporation with its principal place of business located at 9 Farm Springs Road, Farmington, Connecticut 06032.  Upon information and belief, Kidde PLC, Inc. was part of Defendant UTC Fire & Security Americas Corporation, Inc. Upon information and belief, Kidde PLC, Inc. has conducted and/or availed itself of doing business throughout the United States, including those states and locations where Plaintiff was exposed.

87.     Defendant **Kidde-Fenwal, Inc.** ("Kidde-Fenwal") is a corporation organized under the laws of Delaware, having a principal place of business at One Financial Plaza, Hartford, Connecticut 06101.  Kidde-Fenwal is the successor-in-interest to Kidde Fire Fighting, Inc. (f/k/a Chubb National Foam, Inc. f/k/a National Foam Systems, Inc.) (collectively, "Kidde/Kidde Fire") and manufactured and sold AFFF.  Kidde-Fenwal conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

88.     At all times relevant, Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Kidde-Fenwal designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

89.     Defendant **Nation Ford Chemical Co. ("Nation Ford")** is a corporation organized and existing under the laws of South Carolina, with its principal place of business located at 2300 Banks Street, Fort Mill, SC 29715.  Upon information and belief, Nation Ford has conducted

and/or availed itself of doing business throughout the United States, including those states and locations where Plaintiff was exposed.

90. At all times relevant, Nation Ford designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting and by members of the military.

91. Defendant **National Foam, Inc. ("National Foam")** is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 141 Junny Road, Angier, North Carolina 27501. Upon information and belief, National Foam has conducted and/or availed itself of doing business throughout the United States, including those states and locations where Plaintiff was exposed.

92. Beginning in or around 1973, National Foam designed, manufactured, marketed, distributed, and sold AFFF containing PFAS, including but not limited to PFOA and PFOS.

93. On information and belief, National Foam currently manufactures the Angus brand of AFFF products, is a subsidiary of Angus International Safety Group, Ltd., and is the successor-in-interest to Angus Fire Armour Corporation.

94. On information and belief, National Foam merged with Defendant Chubb Fire Ltd. to form Chubb National Foam, Inc. in or around 1988.

95.    On information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc. (collectively referred to as "Chubb").

96.    On information and belief, Chubb was acquired by Williams Holdings in 1997.

97.    On information and belief, Angus Fire Armour Corporation had previously been acquired by Williams Holdings in 1994.

98.    On information and belief, Williams Holdings was demerged into Chubb and Defendant Kidde P.L.C. in or around 2000.

99.    On information and belief, when Williams Holdings was demerged, Defendant Kidde P.L.C. became the successor in interest to National Foam System, Inc. and Angus Fire Armour Corporation.

100.   On information and belief, Defendant Kidde P.L.C. was acquired by Defendant United Technologies Corporation in or around 2005.

101.   On information and belief, Angus Fire Armour Corporation and National Foam separated from United Technologies Corporation in or around 2013.

102.   Defendant **Perimeter Solutions, LP ("Perimeter Solutions")** is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at 8000 Maryland Ave., Suite 350, Clayton, Missouri 63105.   Perimeter Solutions conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

103.   Upon information and belief, in 2019, Perimeter Solutions purchased the Solberg products division of Amerex.

104. At all relevant times, Perimeter Solutions designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

105. Defendant **Tyco Fire Products LP ("Tyco")** is a limited partnership organized and existing under the laws of Delaware, with its principal place of business at 1400 Pennbrook Parkway, Lansdale, Pennsylvania 19446. Tyco conducts business throughout the United States, including those states and locations where Plaintiff was exposed.

106. Upon information and belief, Tyco is the Successor-in-Interest to The Ansul Company ("Ansul"), having acquired Ansul in 1990.

107. Beginning in or around 1975, Ansul manufactured, distributed, and/or sold AFFF that contained PFAS. After Tyco acquired Ansul in 1990, Tyco/Ansul continued to manufacture, distribute, and/or sell AFFF that contained PFAS.

108. Upon information and belief, Tyco acquired the Chemguard brand in 2011 and continues to sell Chemguard AFFF products through its Chemguard Specialty Chemicals division.

109. At all times relevant, Tyco designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced

instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

110.    Defendant **United Technologies Corporation ("United Technologies")** is a foreign corporation organized and existing under the laws of the State of Delaware and conducts business throughout the United States, including those states and locations where Plaintiff was exposed.  United Technologies has its principal place of business at 8 Farm Springs Road, Farmington, CT 06032.

111.    At all times relevant, United Technologies designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

112.    Defendant **UTC Fire & Security Americas Corporation, Inc. ("UTC")** is a corporation organized and existing under the laws of Delaware,  with its principal place of business at 13995 Pasteur Blvd., Palm Beach Gardens, Florida 33418.  Upon information and belief, UTC was a division of Defendant United Technologies Corporation.  UTC does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold AFFF.

113.    At all times relevant, UTC designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing AFFF products that are used in firefighting

training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to AFFF which contained PFAS for use in firefighting.

114.    Defendant **Allstar Fire Equipment Co. ("Allstar")** is a corporation organized and existing under the laws of California, with its principal place of business located at 12328 Lower Azusa Road, Arcadia, California 91006.  Allstar does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

115.    At all times relevant, Allstar designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

116.    Defendant **CB Garment, Inc. ("CB Garment")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 830 Wilson Street, Eugene, OR 97402.  CB Garment does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

117.    At all times relevant, CB Garment designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting

training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

118.    Defendant **Fire-Dex, LLC ("Fire-Dex")** is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 780 South Progress Drive, Medina, Ohio 44256.  Fire-Dex does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

119.    At all times relevant, Fire-Dex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

120.    Defendant **Fire Service Plus, Inc. ("Fire Service")** is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 473 Dividend Drive, Peachtree City, Georgia 30269.  Fire Service does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

121.    At all times relevant, Fire Service designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting

training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

122.     Defendant **Globe Manufacturing Company LLC ("Globe")** is a limited liability company organized and existing under the laws of New Hampshire, with its principal place of business located at 37 Loudon Road, Pittsfield, New Hampshire 03263.  Globe does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

123.     At all times relevant, Globe designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

124.     Defendant **Honeywell Safety Products USA, Inc. ("Honeywell")** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 300 South Tryon Street Suite 500, Charlotte, North Carolina 28202.  Honeywell does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

125.     At all times relevant, Honeywell designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or

otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

126.    Defendant **Innotex Corp. ("Innotex")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 2397 Harts Ferry Road, Ohatchee, Alabama 36271. Innotex does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

127.    At all times relevant, Innotex designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

128.    Defendant **Lion Group, Inc. ("Lion")** is corporation organized and existing under the laws of Ohio, with its principal place of business located at 7200 Poe Avenue, Suite 400 Dayton, Ohio, 45414. Lion does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

129.    At all times relevant, Lion designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting

training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

130.    Defendant **L.N. Curtis and Sons ("L.N. Curtis")** is a corporation organized and existing under the laws of California, with its principal place of business located at 185 Lennon Lane, Suite 110, Walnut Creek, CA 94598.  L.N. Curtis does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

131.    At all times relevant, L.N. Curtis designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

132.    Defendant **Mallory Safety and Supply LLC ("Mallory")** is a limited liability company organized and existing under the laws of Washington, with its principal place of business located at 1040 Industrial Way, Longview, Washington, 98632.  Mallory does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

133.    At all times relevant, Mallory designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or

otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

134.    Defendant **Milliken & Company ("Milliken")** is a corporation organized and existing under the laws of Delaware, with its principal place of business at 920 Milliken Rd, Spartanburg, SC 29303.  Milliken does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

135.    At all times relevant, Milliken designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

136.    Defendant **Mine Safety Appliances Co., Inc. ("MSA")** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania, 16066.  MSA does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

137.    At all times relevant, MSA designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or

otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

138.     Defendant **Municipal Emergency Services, Inc. ("MES")** is a corporation organized and existing under the laws of Nevada, with its principal place of business at 12 Turnberry Lane, Sandy Hook, Connecticut 06482.  MES does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

139.     At all times relevant, MES designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

140.     Defendant **PBI Performance Products, Inc. ("PBI")** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 9800-D Southern Pine Boulevard, Charlotte, North Carolina 28273.  PBI does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

141.    At all times relevant, PBI designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

142.    Defendant **Ricochet Manufacturing Company, LLC ("Ricochet")** is a limited liability company organized and existing under the laws of Pennsylvania, with its principal place of business located at 4700 Wissahickon Avenue, Suite 112, Philadelphia, PA 19144.  Ricochet does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

143.    At all times relevant, Ricochet designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

144.    Defendant **Safety Components Fabric Technologies, Inc. ("Safety Components")** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 40 Emery Street, Greenville, SC 29605.  Safety Components

does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

145.    At all times relevant, Safety Components designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

146.    Defendant **Southern Mills, Inc. ("Southern Mills")** is a corporation organized and existing under the laws of Georgia, with its principal place of business located at 6501 Mall Boulevard, Union City, Georgia 30291.  Southern Mills does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

147.    At all times relevant, Southern Mills designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

148.    Defendant **Stedfast USA, Inc. ("Stedfast")** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 800 Mountain View

Drive, Piney Flats, Tennessee 37686. Stedfast does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

149.    At all times relevant, Stedfast designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

150.    Defendant **Veridian Limited ("Veridian")** is a corporation organized and existing under the laws of Iowa, with its principal place of business located at 3710 West Milwaukee Street, Spencer, IA 51301. Veridian does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

151.    At all times relevant, Veridian designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

152.    Defendant **Witmer Public Safety Group, Inc. ("Witmer")** is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located

at 104 Independence Way, Coatesville, PA 19320. Witmer does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

153. At all times relevant, Witmer designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

154. Defendant **W.L. Gore & Associates, Inc. ("Gore")** is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 1901 Barksdale Road, Newark, Delaware 19711. Gore does and/or has done business throughout the United States, including those states and locations where Plaintiff was exposed, and manufactured and sold TOG.

155. At all times relevant, Gore designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used PFAS-containing TOG products that are used in firefighting training and response activities which are the subject of this Complaint. Further, Defendant designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold, and/or otherwise handled and/or used underlying chemicals and/or products added to TOG which contained PFAS for use in firefighting.

156.    Plaintiff alleges that each named Defendant is in some manner responsible for the acts alleged herein and that they directly and proximately caused Plaintiff's injuries, as alleged herein.

157.    Plaintiff alleges that each named Defendant derived substantial revenue from the PFAS, PFAS materials, and products containing PFAS in AFFF or TOG products that Defendants designed, manufactured, tested, packaged, promoted, marketed, advertised, distributed, labeled, and/or sold within those states and locations where Plaintiff was exposed, and were used by Plaintiff.

158.    Defendants expected or should have expected their acts to have consequences including within those states and locations where Plaintiff was exposed, and derived substantial revenue from interstate commerce.

159.    Defendants purposefully availed themselves of the privilege of conducting activities including within those states and locations where Plaintiff was exposed, thus invoking the benefits and protections of its laws.

160.    When reference is made in this Complaint to any act or omission of any of the Defendants, it shall be deemed that the officers, directors, agents, employees, or representatives of the Defendants committed or authorized such act or omission, or failed to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation, or control of the affairs of Defendants, and did so while acting within the scope of their duties, employment, or agency.

161.    Any and all references to a Defendant or Defendants in this Complaint include any predecessors, successors, parents, subsidiaries, affiliates, and divisions of the named Defendants.

162.     The term "AFFF Defendant" or "AFFF Defendants" refers to all Defendants named herein jointly and severally, unless otherwise stated, who designed, marketed, developed, manufactured, distributed, released, trained users, produced instructional materials, promoted, sold and/or otherwise handled and/or used PFAS-containing AFFF that are used in firefighting training and response exercises which are the subject of this Complaint.

163.     The term "TOG Defendant" or "TOG Defendants" refers to all Defendants names herein who developed, manufactured, marketed, distributed, released, sold, and/or used PFAS, PFAS materials, and products containing PFAS in turnout gear for use in firefighting.

## FACTUAL ALLEGATIONS

### A.     The Flourochemicals: PFOA and PFOS

164.     Fluorochemical products are man-made chemicals composed of a chain of carbon atoms in which all but one of the carbon atoms are bonded to fluorine atoms, and the last carbon atom is attached to a functional group.  The carbon-fluorine bond is one of the strongest chemical bonds that occur in nature, which is a reason why these molecules are so persistent.  Fluorochemical products that contain eight carbon-fluorine bonds are sometimes referred to as "C8."

165.     Fluorochemical products are highly water soluble, which facilitates the ease at which they spread throughout the environment, contaminating soil, groundwater, and surface water.  This mobility is made more dangerous by their persistence in the environment and resistance to biologic, environmental, or photochemical degradation.

166.     Fluorochemical products are readily absorbed in animal and human tissues after oral exposure and accumulate in the serum, kidney, and liver.  They have been found

globally in water, soil, and air as well as in human food supplies, breast milk, umbilical cord blood, and human blood serum.

167.    Fluorochemical products are persistent in the human body. A short-term exposure can result in a body burden that persists for years and can increase with additional exposures.

168.    Since they were first produced, information has emerged showing negative health effects caused by exposure to fluorochemical products.

169.    According to the United States Environmental Protection Agency ("EPA"), studies indicate that exposure to fluorochemical products over certain levels may result in developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects, and other effects (e.g., cholesterol changes).

170.    The EPA has also warned that there is suggestive evidence of carcinogenic potential for fluorochemical products.

171.    The EPA has noted that drinking water can be an additional source of PFAS in the communities where these chemicals have contaminated water supplies. "In communities with contaminated water supplies, such contamination is typically localized and associated with a specific facility, for example…an airfield … at which PFAS were used for firefighting."

172.    The EPA initially issued Health Advisory Levels of 70 parts per trillion ("ppt") for PFOA and PFOS found in drinking water.  However, in June 2022, the EPA issued interim updated health advisory levels for PFOA at .004 ppt, and PFOS at .02 ppt.

**B.      Aqueous Film-Forming Foam**

173.    AFFF is a type of water-based foam that was first developed in the 1960s to extinguish flammable liquid fuel fires at airports and military bases, among other places.

174.    The AFFF designed, manufactured, marketed, distributed, and/or sold by Defendants contained either or both PFOA and PFOS, or the chemical precursors to PFOA or PFOS.

175.    PFOS and/or the chemical precursors to PFOS contained in 3M's AFFF were manufactured by 3M's patented process of electrochemical fluorination ("ECF").

176.    All other AFFF Defendants manufactured fluorosurfactants for use in AFFF through the process of telomerization. Telomerization produced fluorotelomers, including PFOA and/or the chemical precursors to PFOA.

177.    AFFF can be made without PFOA, PFOS, or their precursor chemicals. Fluorine-free foams and short-chains foams do not release PFOA, PFOS, and/or their precursor chemicals into the environment.

178.    When used as AFFF Defendants intended and directed, AFFF Defendants' AFFF products release PFOA, PFOS, and/or their precursor chemicals into the environment.

179.    Once PFOA and PFOS are free in the environment, these chemicals do not hydrolyze, photolyze, or biodegrade under typical environmental conditions and are extremely persistent in the environment. Because of their persistence, they are widely distributed throughout soil, air, and groundwater.

180.    Due to the chemicals' persistent nature, among other things, these chemicals have and continue to cause injury and damage to Plaintiff.

C.     *PFAS-Containing Turnout Gear*

181.     During firefighting training and when responding to fires and performing fire extinguishment, firefighters wear turnouts that are intended to provide a degree of thermal, chemical, and biological protection for a firefighter. Turnout gear components include individual components such as a helmet, hood, jacket, pants and suspenders, boots, and gloves. Each component of the jacket and pants are made of an outer layer, as well as several inner layers that include a moisture barrier and thermal liner which are meant to protect the firefighter from ambient heat.

182.     PFAS chemicals are used in turnout gear to impart heat, water, and stain resistance to the outer shell and moisture barrier of turnout gear.

183.     A June 2020 study of turnout gear by researchers at the University of Notre Dame analyzed 30 new and used turnout jackets and pants originally marketed, distributed, and sold in 2008, 2014, and 2017, by six turnout gear makers, including Defendants MSA, Globe, Lion and Honeywell and found high levels of PFAS in turnout gear worn, used, or handled by firefighters, including Plaintiff.

184.     When exposed to heat, PFAS chemicals in the turnouts off-gas, break down, and degrade into highly mobile and toxic particles and dust, exposing firefighters to PFAS chemicals, particles and dust, including through skin contact/absorption, ingestion (e.g., hand-to-mouth contact) and/or inhalation. Further, firefighter exposure to these highly mobile and toxic materials occurs through normal workplace activities, because particles or dust from the turnouts spreads to fire vehicles and fire stations, as well as firefighters' personal vehicles and homes.

185.     Such workplace exposure to PFAS or PFAS-containing materials has been

found to be toxic to humans. As far back as a July 31, 1980, in an internal memo, DuPont officials described measures that were needed to prevent workplace exposure to PFOA, which they knew could permeate all protective materials, and noted that PFOA's toxicity varied depending on the exposure pathway, acknowledging that ingestion was "slightly toxic," dermal contact was "slightly to moderately toxic" and inhalation was "highly toxic." The memo concluded "continued exposure is not tolerable."

### D. Defendants' Knowledge

186. On information and belief, by the 1960s, Defendants knew, or reasonably should have known, among other things, that: (a) PFOA and PFOS are toxic; and (b) when sprayed in the open environment per the instructions given by the manufacturer, PFOA and PFOS readily migrate through the subsurface, mix easily with groundwater, resist natural degradation, render drinking water unsafe and/or non-potable, and can be removed from public drinking water supplies only at substantial expense.

187. Defendants also knew or reasonably should have known that PFOA and PFOS could be absorbed into the lungs and gastrointestinal tract, potentially causing severe damage to the liver, kidneys, and central nervous system, in addition to other toxic effects, and that PFOA and PFOS are known carcinogens which cause genetic damage.

188. In 1980, 3M published data in peer-reviewed literature showing that humans retained PFOS in their bodies for years. Based on that data, 3M estimated that it could take a person up to 1.5 years to clear just half of the accumulated PFOS from their body after all exposures had ceased.

189. By the early 1980s, the industry suspected a correlation between PFOS

40

exposure and human health effects.  Specifically, manufacturers observed bioaccumulation of PFOS in workers' bodies and birth defects in children of workers.

190.    In 1981, DuPont tested for and found PFOA in the blood of female plant workers in Parkersburg, West Virginia.  DuPont observed and documented pregnancy outcomes in exposed workers, finding two of seven children born to female plant workers between 1979 and 1981 had birth defects – one an "unconfirmed" eye and tear duct defect, and one a nostril and eye defect.

191.    Beginning in 1983, 3M documented a trend of increasing levels of PFOS in the bodies of 3M workers.  In an internal memo, 3M's medical officer warned "we must view this present trend with serious concern.  It is certainly possible that … exposure opportunities are providing a potential uptake of fluorochemicals that exceeds excretion capabilities of the body."

192.    Based on information and belief, in 2000, under pressure from the EPA, 3M announced that it was phasing out PFOS and U.S. production of PFOS; however, 3M's PFOS-based AFFF production did not fully phase out until 2002.

193.    From 1951, DuPont, and on information and belief, Chemours, designed, manufactured, marketed, and sold fluorochemical products, including Teflon nonstick cookware, and more recently, PFAS feedstocks, such as Forafac 1157 N, for the use in the manufacture of AFFF products.

194.    Based on information and belief, in 2001 or earlier, DuPont manufactured, produced, marketed, and/or sold fluorochemical products and/or PFAS feedstocks to some or all of the AFFF product manufacturers for use in AFFF products.

195.    DuPont had been studying the potential toxicity of PFOA since at least the

1960s and knew that it was contaminating drinking water drawn from the Ohio River, and did not disclose to the public or to government regulators what they knew about the substance's potential effects on humans, animals, and/or the environment.

196.    By December 2005, the EPA uncovered evidence that DuPont concealed the environmental and health effects of PFOA, and the EPA announced the "Largest Environmental Administrative Penalty in Agency History." The EPA fined DuPont for violating the Toxic Substances Control Act "Section 8(e) – the requirement that companies report to the EPA substantial risk information about chemicals they manufacture, process or distribute in commerce."

197.    By July 2011, DuPont could no longer credibly dispute the human toxicity of PFOA, which it continued to manufacture.    The "C8 Science Panel" created as part of the settlement of a class action over DuPont's releases from its Washington Works plant reviewed the available scientific evidence and concluded that a "probable link" exists between PFOA exposure and the serious (and potentially fatal) conditions of pregnancy: induced hypertension and preeclampsia. By October 2012, the C8 Science Panel concluded that a probable link also exists between PFOA and five other conditions: high cholesterol, kidney cancer, thyroid disease, testicular cancer, and ulcerative colitis.

198.    In July 2015, DuPont spun off its chemicals division by creating Chemours as a new publicly traded company, once wholly owned by DuPont. By mid-2015, DuPont had dumped its perfluorinated chemical liabilities into the lap of the new Chemours.

199.    Notwithstanding this knowledge, Defendants negligently and carelessly: (1) designed, manufactured, marketed, distributed, and/or sold fluorochemical products; (2) failed to issue reasonable warnings and/or instructions on how fluorochemical products should be

used and disposed of in AFFF or TOG products; (3) failed to recall and/or warn the users of fluorochemical products, which contained or degraded into PFOA and/or PFOS, of the dangers of surface water, soil, and groundwater contamination as a result of standard use and disposal of these products; and (4) further failed and refused to issue the appropriate warnings and/or recalls to the users of fluorochemical products, notwithstanding the fact that Defendants knew the foreseeable identities of the purchasers and end-users of the fluorochemical products, as well as its final fate in water, biota, and humans.

### E.    *James Robert Kelly's Exposure to AFFF and TOG Products*

200.    Upon information and belief, the Encinitas Fire Department stored and used Defendants' AFFF and TOG products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals in firefighter training and response exercises while Plaintiff was serving and/or trained there from approximately 1982 to 2007 as a professional firefighter at the Encinitas Fire Department, CA.

201.    Defendants designed, manufactured, marketed, distributed, and/or sold the AFFF and TOG products which contained PFOA and/or PFOS chemicals and/or their precursor chemicals to fire departments.

202.    The descriptive labels and material safety data sheets for Defendants' AFFF and TOG products containing PFOA or PFOS and/or their precursor chemicals utilized by firefighters within those states and locations where Plaintiff was exposed did not reasonably or adequately describe AFFF's risks to human health.

203.    Defendants knew or should have known of the hazards of AFFF and TOG products containing PFOA and/or PFOS and/or their precursor chemicals when the products

were manufactured.

204. From approximately 1982 to 2007, Plaintiff was a professional firefighter for, and worked for, the Encinitas Fire Department.

205. Throughout the time of his employment as a professional firefighter, Plaintiff used and was exposed to Defendants' AFFF and TOG products.

206. Plaintiff wore turnouts in the ordinary course of performing Plaintiff's duty, as the turnouts were intended to be used and in a foreseeable manner, which exposed Plaintiff to significant levels of PFAS.

207. Plaintiff did not know, and in the exercise of reasonable diligence could not have known, that the turnouts worn or used in the course of performing Plaintiff's duty contained PFAS or PFAS-containing materials. Similarly, Plaintiff did not and could not have known that one routinely suffered exposure to PFAS or PFAS-containing materials in the turnouts worn or used in performing Plaintiff's duties. The turnout gear worn or used by Plaintiff did not and does not contain labeling information saying that the gear contains PFAS, and similarly did not and does not warn Plaintiff of the health risks associated with exposure to PFAS.

208. During Plaintiff's use of Defendants' AFFF and TOG products which contained PFOA and/or PFOS and/or their precursor chemicals, the PFOA and/or PFOS and/or their precursor chemicals entered Plaintiff's body.

209. At no point during his training or career did Plaintiff receive any warning that Defendants' AFFF and TOG products containing PFOA and/or PFOS and/or their precursor chemicals were toxic or carcinogenic.

210. In approximately 2015, Plaintiff's physicians diagnosed Plaintiff with

prostate cancer.

211.    Sometime after his diagnosis, Plaintiff first discovered that his prostate cancer was caused by exposure to Defendants' AFFF and TOG products.

212.    Plaintiff's prostate cancer was directly and proximately caused by exposure to Defendants' AFFF and TOG products.

213.    Plaintiff suffered, and continues to suffer, the effects of his prostate cancer which was directly and proximately caused by his exposure to Defendants' AFFF and TOG products.

## COUNT I – NEGLIGENCE

214.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

215.    Defendants owed a duty to individuals, including Plaintiff, to exercise reasonable, ordinary, and appropriate care in the manufacturing, design, labeling, packaging, testing, instruction, warning, selling, marketing, distribution, and training related to their AFFF and TOG products.

216.    Defendants breached their duty of care and were negligent, grossly negligent, reckless, and willful as described herein in the design, manufacture, labeling, warning, instruction, training, selling, marketing, and distribution of their AFFF and TOG products or underlying PFAS containing chemicals used in AFFF and TOG production in one or more of the following respects:

a.    Failing to design the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

b.    Failing to use reasonable care in the testing of the products so as to avoid an

unreasonable risk of harm to individuals, including Plaintiff;

c. Failing to use appropriate care in inspecting the products so as to avoid an unreasonable risk of harm to individuals, including Plaintiff;

d. Failing to use appropriate care in instructing and/or warning the public as set forth herein of risks associated with the products, so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

e. Failing to use reasonable care in marketing, promoting, and advertising the products so as to avoid unreasonable risk of harm to individuals, including Plaintiff;

f. Otherwise negligently or carelessly designing, manufacturing, marketing, distributing, warning; and/or

g. In selling and or distributing a product which was inherently dangerous to the public.

217.    As a direct and proximate result of Defendants' negligence and breach of duty, Plaintiff has been injured, sustained severe and permanent pain, suffering, disability, impairment, loss of enjoyment of life, loss of care, comfort, economic loss, and damages including, but not limited to, medical expenses, lost income, pain and suffering, and/or other damages.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT II – BATTERY

218. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

219. At all relevant times, Defendants possessed knowledge that the PFAS-containing AFFF and TOG products which they designed, engineered, manufactured, fabricated, sold, handled, released, trained users on, produced instructional materials for, used, and/or distributed were bio-persistent, bio-accumulative, toxic, potentially carcinogenic, and/or otherwise harmful/injurious and that their continued manufacture, use, sale, handling, release, and distribution would result in Plaintiff having PFAS in Plaintiff's blood, and the biopersistence and bioaccumulation of such PFAS in Plaintiff's blood.

220. However, despite possessing such knowledge, Defendants knowingly, purposefully, and/or intentionally continued to engage in such acts and/or omissions, including but not limited to all such acts and/or omissions described in this Complaint, that continued to result in Plaintiff accumulating PFAS in Plaintiff's blood and/or body, and such PFAS persisting and accumulating in Plaintiff's blood and/or body.

221. Defendants did not seek or obtain permission or consent from Plaintiff to put or allow PFAS materials into Plaintiff's blood and/or body, or to persist in and/or accumulate in Plaintiff's blood and/or body.

222. Entry into, persistence in, and accumulation of such PFAS in Plaintiff's body and/or blood without permission or consent is an unlawful and harmful and/or offensive physical invasion and/or contact with Plaintiff's person and unreasonably interferes with Plaintiff's rightful use and possession of Plaintiff's blood and/or body.

223. At all relevant times, the PFAS present in Plaintiff's blood originated from Defendants' acts and/or omissions.

47

224.     Defendants continue to knowingly, intentionally, and/or purposefully engage in acts and/or omissions that result in the unlawful and unconsented-to physical invasion and/or contact with Plaintiff that resulted in persisting and accumulating levels of PFAS in Plaintiff's blood.

225.     Plaintiff, and any reasonable person, would find the contact at issue harmful and/or offensive.

226.     Defendants acted intentionally with the knowledge and/or belief that the contact, presence and/or invasion of PFAS with, onto, and/or into Plaintiff's blood serum, including its persistence and accumulation in such serum, was substantially certain to result from those very acts and/or omissions.

227.     Defendants' intentional acts and/or omissions resulted directly and/or indirectly in harmful contact with Plaintiff's blood and/or body.

228.     The continued presence, persistence, and accumulation of PFAS in the blood and/or body of Plaintiff is offensive, unreasonable, and/or harmful, and thereby constitutes a battery.

229.     The presence of PFAS in the blood and/or body of Plaintiff altered the structure and/or function of such blood and/or body parts and resulted in cancer.

230.     As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered physical injury for which Defendants are therefore liable.

WHEREFORE, Plaintiff prays that judgment be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT III – PRODUCTS LIABILITY – DEFECTIVE DESIGN

231.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

232.    At all times relevant to the Complaint, Defendants were regularly engaged in the design, formulation, production, creation, manufacture, construction, assembly, rebuilding, sale, distribution, preparation, and/or labeling of AFFF and TOG products.

233.    At all times relevant to this Complaint, Defendants regularly participated in placing the AFFF and TOG products into the stream of commerce throughout the United States, including within those states and locations where Plaintiff was exposed.

234.    As manufacturers, designers, refiners, formulators, distributors, suppliers, sellers, and/or marketers of AFFF and TOG products, Defendants owed a duty to use reasonable care to all persons whom Defendants' products might foreseeably cause harm, including Plaintiff, not to manufacture, sell, and/or market any product which is unreasonably dangerous for its intended and foreseeable uses.

235.    All Defendants exercised substantial control over the design, testing, manufacture, packaging, and/or labeling of their AFFF and TOG products that proximately and directly caused Plaintiff's injuries.

236.    Plaintiff was an ordinary user and individual whom Defendants reasonably should have foreseen would use their PFAS-containing AFFF and TOG products.

237.    Plaintiff used Defendants' AFFF and TOG products in a reasonably foreseeable manner.

238.    Plaintiff used Defendants' AFFF and TOG products in the manner and for the purposes for which they were intended.

49

239.    Plaintiff used Defendants' defective and unreasonably dangerous AFFF and TOG products without substantial changes in the condition in which the products were originally sold and left Defendants' control.

240.    Plaintiff was not a sophisticated user of Defendants' AFFF and TOG products.

241.    Defendants' AFFF and TOG products used by Plaintiff did not perform as an ordinary consumer would have reasonably expected the products to perform when used as Plaintiff did in an intended or reasonably foreseeable manner because PFOA and PFOS are carcinogens and otherwise harmful to human health.  Defendants' defective design of the AFFF and TOG products was far more dangerous than Plaintiff or an ordinary consumer would expect when used, as Plaintiff did, in an intended and reasonably foreseeable manner.

242.    The unreasonably dangerous and defective design of Defendants' AFFF and TOG products was a substantial factor and the direct and proximate cause of Plaintiff's injuries.

243.    Defendants could have manufactured, marketed, and sold alternative designs or formulations of AFFF and TOG products that did not contain harmful PFAS.

244.    The PFAS contained within Defendants' AFFF and TOG products was not an inherent characteristic of the product that could not be eliminated without substantially compromising the AFFF and TOG products' usefulness and/or desirability.

245.    Alternative designs and/or formulations were available, practical, reasonable, and technologically feasible during the relevant time Plaintiff was exposed to their PFAS-containing AFFF and TOG products.

246.    The use of these alternative designs would have reduced or prevented the reasonably foreseeable harm to Plaintiff's health that was caused by Defendants' manufacture,

marketing, and/or sale of their AFFF and TOG products.

247.    The risks of AFFF and TOG products were not obvious to users of AFFF, including Plaintiff, nor were they obvious to users in the vicinity of AFFF and TOG use, including Plaintiff, who were unwittingly exposed to Defendants' toxic and carcinogenic chemicals.

248.    Plaintiff, as an ordinary consumer, could not have reasonably discovered the defects, risks, and dangers associated with the use of AFFF and TOG products and could not protect himself from exposure to Defendants' AFFF and TOG products.

249.    The unreasonably dangerous or hazardous properties of Defendants' AFFF and TOG products were not apparent to Plaintiff, who was an ordinary user of the AFFF and TOG products who had ordinary knowledge common to the community.

250.    Plaintiff, as an ordinary user of Defendants' AFFF and TOG products, was unaware that using Defendants' AFFF and TOG products created an unreasonable risk of personal injury to him.

251.    The benefits of Defendants' defective and unreasonably dangerous AFFF and TOG products did not outweigh the unreasonably dangerous design's inherent risk of danger.

252.    Defendants knew or should have known about the inherent risk of harm based on the scientific, technical, and/or medical information reasonably available at the time their AFFF and TOG products left their control.

253.    At the time of manufacture, sale, and/or distribution, Defendants had actual knowledge their AFFF and TOG products were defective and unreasonably dangerous and there was a substantial likelihood the defect would cause Plaintiff's injuries, and Defendants willfully disregarded that knowledge in the manufacture, sale, and/or distribution of their

AFFF and TOG products.

254.    As a direct and proximate result of Defendants' defective design, Plaintiff sustained injuries and has suffered and will continue to suffer some or all of the following damages:

> a.  Past, present, and future medical and hospital bills for diagnosis, monitoring, and treatment of injuries;
>
> b.  Physical injury, both temporary and permanent;
>
> c.  Economic damages;
>
> d.  Non-economic damages, including severe and significant emotional distress, mental pain, and suffering;
>
> e.  Humiliation, embarrassment, and fear;
>
> f.  Loss of enjoyment of life;
>
> g.  Annoyance and inconvenience; and
>
> h.  Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

255.    As a result of Defendants' design and formulation of an unreasonably dangerous and defective product, Defendants are strictly liable in damages to Plaintiff.

256.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this

action, and for such other and further relief as this Court may deem fit, just, and proper.

## COUNT IV – PRODUCTS LIABILITY – FAILURE TO WARN

257.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

258.    Defendants knew, or in the exercise of ordinary care, should have known that exposure to AFFF and TOG products presented a substantial danger when used by ordinary users such as Plaintiff because it is hazardous to human health and the environment.

259.    Defendants knew, or in the exercise of ordinary care, should have known that the manner in which they were manufacturing, marketing, and/or selling AFFF and TOG products would result in physical harm to Plaintiff.

260.    Ordinary consumers of Defendants' AFFF and TOG products such as Plaintiff, who had ordinary knowledge common to the community, would not have recognized the risks.

261.    Plaintiff was an ordinary and foreseeable user of Defendants' AFFF and TOG products.

262.    Defendants' defective and unreasonably dangerous AFFF and TOG products were in substantially the same condition when they left Defendants' control when they were used by Plaintiff and/or when Plaintiff was exposed to Defendants' AFFF and TOG products.

263.    Plaintiff used Defendants' AFFF and TOG products in a reasonably foreseeable manner.

264.    Plaintiff used Defendants' AFFF and TOG products in the manner and for the purposes for which they were intended.

265.    All Defendants exercised substantial control over the design, testing,

manufacture, packaging, and/or labeling of their AFFF and TOG products that proximately and directly caused Plaintiff's injuries.

266.    Defendants failed to adequately warn and instruct Plaintiff of the potential risks of AFFF and TOG products, despite having superior knowledge of their AFFF and TOG products' defective and dangerous condition.

267.    Adequate instructions and warnings on the AFFF and TOG products could have reduced or avoided these foreseeable risks of harm to Plaintiff's health.

268.    Had Defendants provided adequate warnings and instructions, Plaintiff could have taken measures to avoid or lessen the exposure.

269.    The lack of sufficient warnings and instructions was a substantial factor in causing Plaintiff's injuries.

270.    Defendants' failure to adequately warn and instruct Plaintiff of their unreasonably dangerous and defective AFFF and TOG products was a direct and proximate cause of Plaintiff's injuries.

271.    Defendants' failure to provide adequate and sufficient warnings and instructions for the AFFF and TOG products that they manufactured, marketed, and/or sold rendered the AFFF and TOG products defective and unreasonably dangerous.

272.    The material dangers and risks posed by Defendants' AFFF and TOG products were not apparent, obvious, generally appreciated, or already recognized by Plaintiff, as one with knowledge common to the community.

273.    At the time of manufacture, sale, and/or distribution, Defendants had actual knowledge their AFFF and TOG products were defective and unreasonably dangerous and there was a substantial likelihood the defect would cause Plaintiff's injuries, and Defendants

willfully disregarded that knowledge in the manufacture, sale, and/or distribution of their AFFF and TOG products.

274.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered and will continue to suffer some or all of the following damages:

      a.    Past, present, and future medical and hospital bills for diagnosis, monitoring, and treatment of injuries;

      b.    Physical injury, both temporary and permanent;

      c.    Economic damages;

      d.    Non-economic damages including severe and significant emotional distress, mental pain, and suffering;

      e.    Humiliation, embarrassment, and fear;

      f.    Loss of enjoyment of life;

      g.    Annoyance and inconvenience; and

      h.    Other damages, which, under the law and circumstances, Plaintiff is entitled to recover, including attorneys' fees and costs associated with the prosecution of this action.

275.    As a result of Defendants' manufacture, sale, distribution, and failure to warn and properly instruct Plaintiff of their defective AFFF and TOG products, Defendants are liable in damages to Plaintiff.

276.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for

actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

### COUNT V - FRAUDULENT CONCEALMENT

277.    Plaintiff incorporates herein by reference each and every paragraph of this Complaint as if restated in full herein.

278.    Defendants knowingly, intentionally, maliciously, willfully, wantonly, recklessly, and/or negligently failed and/or refused to advise Plaintiff of the dangers and/or health risks posed by Defendants' AFFF and TOG products.

279.    Defendants negligently, knowingly, maliciously, willfully, wantonly, recklessly, intentionally, and/or negligently withheld, misrepresented, and/or concealed information regarding Defendants' AFFF and TOG products from Plaintiff, who had a right to know of information which would have prevented him from being exposed and/or continuing to be exposed to the AFFF and TOG products.

280.    For at least several decades, Defendants had knowledge or the means of knowledge that Defendants' AFFF and TOG products were causally connected with or could increase the risk of causing damage to humans and animals, including knowledge of statistically significant findings showing a causal connection between exposure to AFFF and TOG products and physical injuries in humans and animals.

281.    In connection with the AFFF and TOG products, Defendants have had, and continue to have, a general duty of care to disclose to Plaintiff the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, including a general duty of care to disclose to Plaintiff that Defendants had, and were continuingly,

exposing Plaintiff to harmful levels of AFFF and TOG products.

282.     In addition to its general duty of care, Defendants also voluntarily assumed a duty to disclose to Plaintiff the actual and potential harm to Plaintiff's body as a direct and proximate result of Defendants' acts and/or omissions, including a duty to disclose to Plaintiff that Defendants had exposed, and were continuingly exposing Plaintiff to harmful AFFF and TOG products, which duty was voluntarily assumed by affirmatively representing to Plaintiff that his AFFF and TOG exposure was harmless, when Defendants knew and/or reasonably should have known that the Defendants' AFFF and TOG products caused, and were continuing to cause, bodily injury.

283.     Through Defendants' superior knowledge, responsibility, and/or control over the fluorochemical products, and Defendants' voluntary actions and/or representations, a relationship of trust and confidence existed between Defendants and Plaintiff.

284.     Despite Defendants' knowledge regarding fluorochemical exposure, and despite Defendants' duties to disclose to Plaintiff, Defendants negligently, maliciously, knowingly, willfully, wantonly, recklessly and/or intentionally withheld, misrepresented, and/or concealed information from Plaintiff regarding Plaintiff's exposure to AFFF and TOG products.

285.     Defendants withheld, misrepresented, and/or concealed information regarding AFFF and TOG exposure from Plaintiff with the intention to mislead and/or defraud Plaintiff into believing that Plaintiff's AFFF and TOG exposure was not harmful, and to mislead and/or defraud Plaintiff into continuing to use their AFFF and TOG products.

286.     Defendants withheld, misrepresented, and/or concealed information regarding AFFF and TOG exposure that was a substantial factor in causing Plaintiff's harm.

287.    As a direct and proximate result of the aforesaid acts and/or omissions by Defendants, acting for and on its own behalf and as agent, ostensible agent, employee, conspirator and/or joint venture of others, Plaintiff was exposed to Defendants' AFFF and TOG products and was injured.

288.    Defendants not only withheld, misrepresented, and/or concealed material information from Plaintiff but also committed fraud against Plaintiff by affirmatively representing to Plaintiff that their AFFF and TOG products were harmless and/or did not present any risk of harm, when Defendants knew, reasonably should have known, and/or with utter disregard and recklessness as to whether it was true or not, that Defendants' AFFF and TOG products had caused, and were continuing to cause, bodily injury and/or risk of such bodily injury to Plaintiff.

289.    Defendants' representations to Plaintiff were knowingly, intentionally, negligently, and/or recklessly false.

290.    Defendants had, and continue to have, a duty of care to provide Plaintiff, with truthful representations regarding the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions, and Defendants voluntarily assumed a duty of care to provide Plaintiff with truthful representations regarding Defendants' AFFF and TOG products and the actual and potential harm to his person as a direct and proximate result of Defendants' acts and/or omissions.

291.    Defendants' affirmative representations and/or omissions to Plaintiff were false and were material to Plaintiff in forming Plaintiff's belief that Defendants' AFFF and TOG products were safe, in causing Plaintiff to continue to use the AFFF and TOG products, and in causing Plaintiff to not seek treatment and/or ways to remedy his past and continuing

exposure to AFFF and TOG products.

292.    Defendants made the affirmative representations and/or omissions to Plaintiff with the intention that Plaintiff would be misled into relying on such affirmative representations and/or omissions.

293.    Plaintiff relied on Defendants' affirmative representations and/or omissions in forming the belief that Defendants' AFFF and TOG products were safe in causing Plaintiff to continue to use the AFFF and TOG products, and in not seeking treatment and/or ways to remedy past and continuing exposure to Defendants' AFFF and TOG products.

294.    Plaintiff was damaged and physically harmed as a direct and proximate result of his justified reliance on Defendants' affirmative, fraudulent representations and/or omissions and, as a direct and proximate result of such justified reliance, Plaintiff continued to use the AFFF and TOG products.

295.    Defendants' acts were willful, wanton, reckless and/or conducted with a reckless indifference to the rights of Plaintiff and constituted intentional or grossly negligent conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.


## COUNT VI – BREACH OF EXPRESS AND IMPLIED WARRANTIES

296.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

297.    At all times relevant hereto, Defendants manufactured, marketed, labeled,

and/or sold the AFFF and TOG products that has been previously alleged and described herein.

298.    At the time Defendants designed, developed, marketed, sold, labeled, and distributed the AFFF and TOG products, Defendants knew of the use for which it was intended, and implied and/or expressly warranted that the product was merchantable, safe, and fit for its intended purpose.

299.    Defendants warranted that the product was merchantable and fit for the particular purpose for which it was intended and would be reasonably safe.

300.    These warranties were breached, and such breach directly and proximately caused Plaintiff's injuries and damages.

301.    Plaintiff is within the class of foreseeable users and reasonably relied upon Defendants' judgment, and the implied and/or express warranties in using the products.

302.    Defendants breached their implied and/or express warranties and did not meet the expectations for the performance of the product when used for its intended use and was neither of merchantable quality nor safe for its intended use in that the product has a propensity to cause serious injury.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.


## COUNT VII – ACTUAL FRAUDULENT TRANSFER (DuPont and Chemours Co.)

303.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

304.   Through their effectuation of the spinoff, Chemours Co. and DuPont (the "Fraudulent Transfer Defendants") caused Chemours Co. to transfer valuable assets to DuPont, including but not limited to the $3.9 billion dividend (the "Transfers"), while simultaneously assuming significant liabilities (the "Assumed Liabilities").

305.   The Transfers and Assumed Liabilities were made for the benefit of DuPont.

306.   At the time that the Transfers were made and the Liabilities were assumed, and until the spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

307.   The Fraudulent Transfer Defendants made the Transfers and incurred the Assumed Liabilities with the actual intent to hinder, delay, and defraud the creditors or future creditors of Chemours Co.

308.   Plaintiff has been harmed and will be harmed as a result of the conduct of the Fraudulent Transfer Defendants.

309.   Plaintiff is entitled to avoid the Transfers and to recover property or value transferred to DuPont.

### COUNT VIII – CONSTRUCTIVE FRAUDULENT TRANSFER
### (DuPont and Chemours Co.)

310.   Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

311.   Chemours Co. did not receive reasonably equivalent value from DuPont in exchange for the Transfers and Assumed Liabilities.

312.   Each of the Transfers and the assumption of the Assumed Liabilities by

Chemours Co. was made to or for the benefit of DuPont.

313.    At the time that the Transfers were made and the Assumed Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

314.    The Fraudulent Transfer Defendants made the Transfers and assumed the Assumed Liabilities when Chemours Co. was engaged or about to be engaged in a business for which its remaining assets were unreasonably small in relation to its business.

315.    Chemours Co. was insolvent or in contemplation of insolvency at the time of the Transfers, or became insolvent as a result of the Transfers and its assumption of the Assumed Liabilities.

316.    At the time that the Transfers were made and Chemours Co. assumed the Assumed Liabilities, the Fraudulent Transfer Defendants intended to incur, or believed or reasonably should have believed, that Chemours Co. would incur debts beyond its ability to pay as they became due.

317.    Plaintiff has been harmed and will be harmed as a result of the Transfers.

318.    Plaintiff is entitled to avoid the Transfers and to recover property or value transferred to DuPont.


## COUNT IX – MEDICAL MONITORING

319.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Complaint as if restated in full herein.

320.    Medical monitoring is available to Plaintiff as a stand-alone cause of action because of the increased risk of developing the diseases and conditions discussed herein

constitute an injury-in-fact.

321.    Plaintiff seeks consequential damages sufficient to fund a medical monitoring program that is reasonably tailored to the exposure risks of the contaminants released by Defendants' AFFF and TOG products, including but not limited to PFOS, PFOA, and/or their chemical precursors.

322.    Defendants knew or should have known that exposure to PFAS was hazardous to human health.

323.    Defendants knew or should have known that the manner in which they were manufacturing, marketing, and selling their AFFF and TOG products containing PFOS, PFOA, and/or their chemical precursors that would result in Plaintiff being exposed to increased levels of PFAS.

324.    Defendants continued negligent acts and omissions in manufacturing, marketing, and selling their AFFF and TOG products were the proximate cause of Plaintiff's excessive exposure to PFAS.

325.    The resulting exposure significantly increased Plaintiff's risk of contracting serious health conditions, including but not limited to kidney cancer, testicular cancer, ulcerative colitis, thyroid disease, pregnancy induced hypertension (including preeclampsia), hypercholesterolemia, and autoimmune diseases such as sarcoidosis.

326.    Plaintiff has also experienced fear and anxiety as a result of Plaintiff's increased risk of contracting the aforementioned conditions.

327.    The significantly increased health risks associated with exposure to PFOS, PFOA, and/or their chemical precursors make periodic diagnostic medical examinations reasonable and necessary.

328.    Plaintiff has incurred expenses and will incur future expenses for medical monitoring and, as a result, seeks payment of related medical expenses as an element of the damages Plaintiff is entitled to from Defendants.

329.    To compensate Plaintiff for damages suffered due to Defendants' acts, Plaintiff requires, among other things, that Defendants collectively pay the past and future costs of obtaining necessary medical care, toxicological examinations and diagnoses, and any other medical monitoring necessary to ascertain and treat any current or future injuries suffered as a result of Plaintiff's exposure to PFAS, with Plaintiff retaining the freedom to choose medical providers.  Many of these costs would not be covered by health care insurers, and if covered, may unfairly result in increased premiums.

330.    The increased susceptibility to certain injuries and irreparable threat to future health and well-being Plaintiff faces as a result of Plaintiff's exposure to increased levels of PFAS can only be mitigated and/or addressed by the creation of a medical monitoring program (the "Monitoring Program") that includes but is not limited to:

a.    Establishing a program that provides education and outreach on the existence and availability of the services established under the Monitoring Program, including but not limited to the establishment of a public website with information about the Monitoring Program, meetings with potentially eligible members, development and dissemination of outreach materials about the program, and the establishment of phone information services;

b.    Funding additional studies of the long-term effects of exposure to PFOS, PFOA, and/or their chemical precursors;

c.    Funding medical surveillance;

> d. Funding research into possible treatments for the detrimental effects of PFAS exposure suffered by Plaintiff as a result of the acts and omissions alleged here;
>
> e. Gathering and forwarding to Plaintiff's treating physicians information related to the diagnosis and treatment of injuries resulting from Plaintiff's exposure to PFAS; and
>
> f. Assisting in the early diagnosis and treatment of injuries resulting from exposure to PFAS through ongoing testing and monitoring of Plaintiff.

331.     Prescribed monitoring procedures exist that make the early detection of these diseases possible.

332.     These monitoring procedures or regimes are different from normally recommended procedures that would be used in the absence of the exposure.

333.     The prescribed medical surveillance is reasonably necessary according to contemporary scientific principles for persons such as Plaintiff, who have been exposed and continue to be exposed to excessive levels of PFAS.

334.     Plaintiff will suffer irreparable harm if the Monitoring Program is not implemented because Plaintiff is in danger of suffering serious health conditions as a result of Plaintiff's prolonged exposure to the contaminants described herein.

335.     Detection of these diseases and early treatment is medically reasonable and necessary to prevent additional injury and/or injury progression.

336.     It is also medically reasonable and necessary to collect data and coordinate study efforts for persons exposed to such substances in order to effectively treat Plaintiff.

337.     Establishment of the Monitoring Program is an essential part of the consequential damages for Plaintiff's exposure to PFAS because without said program,

Plaintiff will be subjected to additional injury and/or injury progression.

338.     Plaintiff requests that the Court appoint a plan administrator, require Defendants to fund the medical monitoring plan, and reserve jurisdiction to enforce the terms and conditions of the Monitoring Program.

339.     Accordingly, Plaintiff is entitled to a medical monitoring program that provides for medical testing, surveillance, monitoring, and study of Plaintiff for conditions associated with exposure to the contaminants described herein, as well as payment of attorney's fees and expenses, and any other relief this court deems just and proper.

## COUNT X - CLAIM FOR PUNITIVE DAMAGES

340.     Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

341.     At all times relevant to the present cause of action, Defendants manufactured, marketed, and/or sold the AFFF and TOG products that were used by Plaintiff and that resulted in the physical bodily injuries that Plaintiff has suffered and will continue to suffer.

342.     At the time the above-described, affirmative, voluntary, and intentional acts were performed by Defendants, Defendants knew or should have known that their AFFF and TOG products were toxic chemicals capable of causing harm to human health.

343.     Defendants' negligent, reckless, willful, and/or wanton actions and/or intentional failures to act caused Plaintiff to be exposed to their AFFF and TOG products.

344.     The willful, wanton, malicious, and/or reckless conduct of Defendants, includes, but is not limited to: (1) issuing no warnings and failing to divulge material information concerning the release of fluorochemicals, including but not limited to PFOA and

PFOS; (2) failing to take all reasonable measures to ensure their AFFF and TOG products would be used effectively and properly disposed of; and (3) failing to prevent the foreseeable impacts of their AFFF product exposure upon Plaintiff.

345.    As a result of Defendants' conduct, Plaintiff has been forced to incur and will continue to incur significant costs related to the harm caused by Defendants' AFFF and TOG products and will continue to suffer the serious, debilitating, and severe physical, mental, and emotional distress of Plaintiff's illness caused by Defendants' AFFF and TOG products.

346.    Defendants have demonstrated an outrageous conscious disregard for the physical safety of Plaintiff and acted with implied malice, warranting the imposition of punitive damages.

347.    Upon information and belief, Defendants' conduct involved wanton, willful, and/or a conscious and reckless disregard for the health, safety, property, and rights of others. The Court should award the Plaintiff punitive damages in an amount sufficient to deter and punish such conduct.

WHEREFORE, Plaintiff prays for judgment to be entered against the Defendants for punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.


## COUNT XI – LOSS OF CONSORTIUM

348.    Plaintiff hereby repeats, realleges, and reiterates each and every allegation in the preceding paragraphs as if fully restated herein.

349.    Plaintiffs allege they are husband and wife. As a result of the tortious conduct of Defendants' described in the preceding paragraphs, Plaintiffs assert that their marriage and

marital relationship was interrupted and continues to be interrupted.

350.    The severe, unremitting pain from which the Plaintiff James Robert Kelly, suffers as well as the disability sustained as a result of the tortious conduct of Defendants has permanently interrupted and damaged the Plaintiffs' marriage and the Plaintiff James Robert Kelly ability to function as a normal husband.

351.    As a result of Defendants' tortious conduct, Plaintiff Denise Marie Kelly hereby asserts a claim for loss of consortium, including but not limited to loss of companionship and comfort.

WHEREFORE, Plaintiff Denise Marie Kelly prays for judgment to be entered against the Defendants for actual, compensatory, consequential, and punitive damages, together with the costs of this action, and for such other and further relief as this Court may deem fit, just, and proper.

## **TOLLING OF THE STATUTE OF LIMITATIONS**

### ***Discovery Rule Tolling***

352.    Plaintiff, as a reasonable person, had no way of knowing about the risk of serious injury associated with the use of and exposure to AFFF and TOG products until very recently.

353.    Until very recently, Plaintiff could not have discovered, through the exercise of reasonable diligence, that exposure to AFFF and TOG products is harmful to human health.

354.    Plaintiff did not discover and did not know of facts that would cause a reasonable person to suspect the risk associated with the use of and exposure to AFFF and TOG products, nor would a reasonable and diligent investigation by Plaintiff have disclosed

that AFFF and TOG products could cause personal injury.

355.    For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### *Fraudulent Concealment Tolling*

356.    All applicable statute of limitations have also been tolled by Defendants' knowledge and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

357.    Instead of disclosing critical safety information regarding their AFFF and TOG products, Defendants have consistently and falsely represented the safety of their AFFF and TOG products.

358.    This fraudulent concealment continues through the present day.

359.    Due to this fraudulent concealment, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to Plaintiff's claims.

### *Estoppel*

360.    Defendants were under a continuous duty to consumers, end users, and other persons coming into contact with their products, including Plaintiff, to accurately provide safety information concerning its products and the risk associated with the use of and exposure to their AFFF and TOG products.

361.    Instead, Defendants knowingly, affirmatively, and actively concealed safety information concerning AFFF and TOG products and the serious risks associated with the use of and exposure to their AFFF and TOG products.

362.    Based on the foregoing, Defendants are estopped from relying on any statute

of limitations in defense of this action.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs demand for judgment to be entered against all Defendants, jointly and severally, and request the following relief from the Court:

A. Compensatory damages, including but not limited to cost of past, present, and future medical bills associated with the diagnosis and treatment related to Plaintiff's AFFF exposure; lost wages or income; loss of consortium and past, present, and future pain and suffering incurred by Plaintiff;

B. Punitive damages in an amount to sufficiently deter Defendants' similar wrongful conduct in the future;

C. Reasonable fees for attorneys and expert witnesses;

D. Costs and disbursements of this lawsuit;

E. Interest on the damages according to law; and

F. Any other and further relief as the Court deems just, proper and equitable.

## **JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all Counts and issues within this Complaint.

Respectfully submitted,

**SCHOCHOR, STATON,
GOLDBERG AND CARDEA, P.A.**

*/s/ Jonathan Schochor*
Jonathan Schochor (#07852 U.S. District Court
for the District of Maryland)
jschochor@sfspa.com

70

Kerry D. Staton (#00547 U.S. District Court for
the District of Maryland)
kstaton@sfspa.com
Joshua F. Kahn (#18238 U.S. District Court for
the District of Maryland)
jkahn@sfspa.com
Schochor, Staton, Goldberg and Cardea, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21212
(410) 234-1000 – telephone
(410) 234-1010 – facsimile

*Attorneys for Plaintiffs*